IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RACHPAL SINGH SRAN,**<br><br>Petitioner,<br><br>**v.**<br><br>**P.D. BRAZELTON,**<br><br>Respondent. | Case No. **1:12-cv-01304 MJS (HC)**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY** |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Tami M. Krenzin of the office of the California Attorney General. Both parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 4, 8.)

I.    **PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Madera, following his plea to gross vehicular manslaughter while driving intoxicated (with driving under the influence priors) on December 17, 2008. (Lodged Doc. 2.) On February 6, 2009, the trial court sentenced Petitioner to serve an indeterminate term of fifteen (15) years to life in jail. (Id.)

1   Petitioner did not appeal the conviction. (Lodged Doc. 3) However, he proceeded

2   to file collateral appeals in state court. On October 26, 2011, Petitioner filed a state

3   petition for writ of habeas corpus in the Madera County Superior Court. (Lodged Docs. 4-

4   5.) On November 8, 2011, the Superior Court denied the petition. (Id.) On December 8,

5   2011, Petitioner filed a state petition with the California Court of Appeal, Fifth Appellate

6   District. (Lodged Docs. 6-7.) The petition was denied on January 20, 2012. Finally,

7   Petitioner filed a petition with the Supreme Court of California on February 8, 2012.

8   (Lodged Docs. 8-9.) The petition was denied on May 23, 2012. (Id.)

9   Petitioner filed his federal habeas petition on August 10, 2012. (Pet., ECF No. 1.)

10  The petition raises four grounds for relief: 1) Petitioner's guilty pleas were involuntarily

11  made and based on coercion and manipulation; 2) Petitioner's counsel was ineffective in

12  manipulating Petitioner to plead guilty, not obtaining an interpreter, and not presenting

13  Petitioner viable defenses; 3) Petitioner's fourth amendment rights were violated

14  because he was not  provided an interpreter during the proceedings; and 4) Petitioner's

15  pleas were improperly taken because they lacked the requisite factual predicate for the

16  crimes of conviction. (Id. at 16.)

17  Respondent filed an answer to the petition on July 9, 2013. (Answer, ECF No.

18  24.) Petitioner filed a traverse on August 12, 2013. (Traverse, ECF No. 27.) The matter

19  stands ready for adjudication.

20  **II.    STATEMENT OF THE FACTS**

21  On February 8, 2008, at approximately 2:00 p.m., Petitioner drove southbound

22  on Gateway Drive. (Lodged Doc. 15 at 3-4.) He crossed the center line and collided with

23  a vehicle being driven by Julie Herrera. Julie Herrera's husband, Manuel, was in the

24  passenger seat and was pronounced dead at the scene. Julie Herrera was transported

25  to the hospital for a  right leg amputation and treatment of internal injuries. As a result of

26  multiple organ failure and pneumonia, she died on April 1, 2008. (Lodged Doc. 15 at 3-

27  4.)

28  At the accident scene, officers observed that Petitioner appeared intoxicated. He

1    told the officers that he had consumed alcohol earlier that day. Later, upon booking, a

2    blood draw revealed Petitioner's blood alcohol level to be .27 percent. (Id.)

3        Petitioner pled to gross vehicular manslaughter while driving intoxicated and

4    admitted prior convictions for driving under the influence. Petitioner was sentenced to

5    an indeterminate term of fifteen years to life. (Lodged Doc. 2.)

6    **III.    GOVERNING LAW**

7        **A.    Jurisdiction**

8        Relief by way of a petition for writ of habeas corpus extends to a person in

9    custody pursuant to the judgment of a state court if the custody is in violation of the

10   Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. §

11   2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he

12   suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the

13   conviction challenged arises out of the Madera County Superior Court, which is located

14   within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court

15   has jurisdiction over the action.

16       **B.    Legal Standard of Review**

17       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

18   Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

19   filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood,

20   114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

21   the AEDPA; thus, it is governed by its provisions.

22       Under AEDPA, an application for a writ of habeas corpus by a person in custody

23   under a judgment of a state court may be granted only for violations of the Constitution

24   or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.

25   7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

26   state court proceedings if the state court's adjudication of the claim:

27       (1) resulted in a decision that was contrary to, or involved an
         unreasonable application of, clearly established federal law, as
28       determined by the Supreme Court of the United States; or

3

1      (2) resulted in a decision that was based on an unreasonable

2  determination of the facts in light of the evidence presented in the State
court proceeding.

3  28 U.S.C. § 2254(d).

4             1.      <u>Contrary to or an Unreasonable Application of Federal Law</u>

5      A state court decision is "contrary to" federal law if it "applies a rule that

6  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

7  that are materially indistinguishable from" a Supreme Court case, yet reaches a different

8  result." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005) citing <u>Williams</u>, 529 U.S. at 405-06.

9  "AEDPA does not require state and federal courts to wait for some nearly identical

10  factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

11  even a general standard may be applied in an unreasonable manner" <u>Panetti v.</u>

12  <u>Quarterman</u>, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

13  "clearly established Federal law" requirement "does not demand more than a 'principle'

14  or 'general standard.'" <u>Musladin v. Lamarque</u>, 555 F.3d 830, 839 (2009).  For a state

15  decision to be an unreasonable application of clearly established federal law under §

16  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

17  (or principles) to the issue before the state court.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-

18  71 (2003).  A state court decision will involve an "unreasonable application of" federal

19  law only if it is "objectively unreasonable."  <u>Id.</u> at 75-76, quoting <u>Williams</u>, 529 U.S. at

20  409-10; <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002). In <u>Harrington v. Richter</u>, the

21  Court further stresses that "an *unreasonable* application of federal law is different from

22  an *incorrect* application of federal law."  131 S. Ct. 770, 785 (2011), (citing <u>Williams</u>, 529

23  U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

24  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

25  correctness of the state court's decision."  <u>Id.</u> at 786 (citing <u>Yarborough v. Alvarado</u>, 541

26  U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

27  have in reading outcomes in case-by-case determinations."  <u>Id.</u>; <u>Renico v. Lett</u>, 130 S.

28  Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

4

1  Federal law for a state court to decline to apply a specific legal rule that has not been

2  squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

3  (2009), quoted by Richter, 131 S. Ct. at 786.

4                    2.      Review of State Decisions

5        "Where there has been one reasoned state judgment rejecting a federal claim,

6  later unexplained orders upholding that judgment or rejecting the claim rest on the same

7  grounds."  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

8  "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

9  (9th Cir. 2006).    Determining  whether  a  state  court's  decision  resulted  from  an

10  unreasonable legal or factual conclusion, "does not require that there be an opinion from

11  the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

12  "Where  a  state  court's  decision  is  unaccompanied  by  an  explanation,  the  habeas

13  petitioner's burden still must be met by showing there was no reasonable basis for the

14  state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does

15  not require a state court to give reasons before its decision can be deemed to have been

16  'adjudicated on the merits.'").

17        Richter instructs that whether the state court decision is reasoned and explained,

18  or merely a summary denial, the approach to evaluating unreasonableness under §

19  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

20  or theories supported or, as here, could have supported, the state court's decision; then

21  it must ask whether it is possible fairminded jurists could disagree that those arguments

22  or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

23  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

24  was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

25  authority to issue the writ in cases where there is no possibility fairminded jurists could

26  disagree that the state court's decision conflicts with this Court's precedents." Id. To put

27  it yet another way:

28              As a condition for obtaining habeas corpus relief from a federal

1    court, a state prisoner must show that the state court's ruling on the claim
2    being presented in federal court was so lacking in justification that there
     was an error well understood and comprehended in existing law beyond
     any possibility for fairminded disagreement.

3    Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts

4    are the principal forum for asserting constitutional challenges to state convictions." Id. at

5    787. It follows from this consideration that § 2254(d) "complements the exhaustion

6    requirement and the doctrine of procedural bar to ensure that state proceedings are the

7    central process, not just a preliminary step for later federal habeas proceedings." Id.

8    (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

9                    3.      Prejudicial Impact of Constitutional Error

10        The prejudicial impact of any constitutional error is assessed by asking whether

11   the error had "a substantial and injurious effect or influence in determining the jury's

12   verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

13   U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

14   state court recognized the error and reviewed it for harmlessness). Some constitutional

15   errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v.

16   Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

17   (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective

18   assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

19   Strickland prejudice standard is applied and courts do not engage in a separate analysis

20   applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin

21   v. Lamarque, 555 F.3d at 834.

22   **IV.    REVIEW OF PETITION**

23        **A.    Procedural Bar**

24        Respondent asserts that Petitioner's first, third, and fourth claims are procedurally

25   barred as the state court denied the claims as untimely.

26        Before reviewing petitioner's habeas claims, the Court must first consider whether

27   those claims are procedurally barred. "[F]ederal habeas courts generally may not review

28   a state court's denial of a state prisoner's federal constitutional claim if the state court's

1   decision rests on a state procedural rule that is independent of the federal question and
2   adequate." Coleman v. Thompson, 501 U.S. 722, 722-23, 111 S. Ct. 2546, 115 L. Ed. 2d
3   640 (1991). The procedural default doctrine bars federal habeas review "unless the
4   petitioner can demonstrate cause for the default and actual prejudice as a result of the
5   alleged violation of federal law, or demonstrate that failure to consider the claims will
6   result in a fundamental miscarriage of justice." Id. at 724.

7        Plaintiff's claims are potentially procedurally barred by the California Supreme
8   Court's decision to deny state habeas review because his habeas corpus petition was
9   untimely. The procedural bar precludes federal habeas review when the state court's
10  denial of review was based on a petitioner's failure to meet an "independent and
11  adequate" state procedural requirement. Coleman, 501 U.S. at 729-30.

12       Here, Petitioner's California Supreme Court petition was denied with a citation to
13  In re Robbins, 18 Cal. 4th 770, 780 (1998) (discussing the framework for California's
14  timely filing requirement), indicating that Petitioner had failed to meet the state's timely
15  filing requirement. See Walker v. Martin, 131 S. Ct. 1120, 1124, 179 L. Ed. 2d 62 (2011)
16  ("California courts signal that a habeas petition is denied as untimely by citing the
17  controlling decisions, i.e., Clark and Robbins."). California's "substantial delay" timeliness
18  standard satisfies the "independent and adequate" requirement. See Bennet v. Mueller,
19  322 F.3d 573, 582-83 (9th Cir. 2003) (finding that California's timeliness standard is
20  independent of federal law); Walker, 131 S. Ct. at 1131 (finding that California's
21  timeliness standard is adequate). Therefore, Petitioner is procedurally barred from
22  seeking habeas review.

23       **B.    Cause and Prejudice to Overcome Procedural Default**

24       Even when a federal claim has been procedurally defaulted, "[t]he bar to federal
25  review may be lifted, if 'the prisoner can demonstrate cause for the [procedural] default
26  [in state court] and actual prejudice as a result of the alleged violation of federal law.' "
27  Maples v. Thomas, 132 S.Ct. 912, 922, 181 L. Ed. 2d 807 (2012) (quoting Coleman, 501
28  U.S. at 750, 746-47); see also Schneider v. McDaniel, 674 F.3d 1144, 1153 (9th Cir.

7

2012). Adequate "cause" for a default must be an "external" factor that cannot fairly be attributed to the petitioner. <u>Coleman</u>, 501 US. at 753. The Supreme Court has recognized that ineffective assistance of counsel may satisfy the cause requirement necessary to overcome a procedural default. <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). In his federal petition, Petitioner only describes the ineffectiveness of his trial attorney, and does not describe the conduct of appellate counsel.

In <u>Murray v. Carrier</u>, 477 U.S. at 488-89, the Supreme Court explained the potential satisfaction of the cause requirement through a claim of ineffective assistance of counsel as follows:

> "Although we have not identified with precision exactly what constitutes 'cause' to excuse a procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing to properly preserve the claim for review in state court will suffice. Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for procedural default of some other constitutional claim is itself an independent constitutional claim. And we held in Carrier that the principles of comity and federalism that underlie our longstanding exhaustion doctrine ... require that constitutional claim, like others, to be first raised in state court."

<u>Carrier</u>, 477 U.S. at 489.

In this case, Petitioner has not raised a claim of ineffective assistance of appellate counsel (or show that he was appointed appellate counsel), let alone met his burden of showing his appellate counsel's failure to raise claims on direct appeal constituted ineffective assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Furthermore, mental illness, however, does not constitute "good cause" unless "the mental condition rendered the petitioner completely unable to comply with a state's procedures and he had no assistance." <u>See</u> <u>id.</u> at 1154-55; <u>see also</u> <u>Tacho v. Martinez</u>, 862 F.2d 1376, 1381 (9th Cir. 1988) (establishing that mental illness is not cause to excuse a procedural default). Here, Petitioner has not alleged complete inability to

1    comply or lack of assistance. In fact, Petitioner received help from other prison inmates
2    in drafting his state petitions, (See ECF No. 29), which under Tacho constitutes
3    "assistance." Id.

4        The California Supreme Court denied Petitioner's claims on independent and
5    adequate procedural grounds, and because Petitioner has not alleged good cause for
6    his delay, the procedural bar applies. See Williams v. Walker, 461 Fed. Appx. 550, 553
7    (9th Cir. 2011) ("The denial of habeas relief by the California Supreme Court on the
8    ground that the application for relief was filed untimely is an independent and adequate
9    state procedural ground requiring denial of subsequent habeas petitions in federal
10   court."); Vargas v. Brazelton, No. C 12-0268, 2013 U.S. Dist. LEXIS 8663, 2013 WL
11   244756, at *2-3 ("[C]ase law is clear that a citation to Robbins on the basis of timeliness
12   is independent and adequate...[B]ecause petitioner has not established cause or
13   prejudice for his default, he cannot overcome the bar."). As Petitioner has not shown
14   cause and prejudice to provide an exception to the procedural bar, his first, third and
15   fourth claims are denied as procedurally defaulted.

16       **C.    Claim Two: Ineffective Assistance of Counsel**

17       Petitioner contends that his rights under the Sixth and Fourteenth Amendments of
18   the United States Constitution were deprived by the alleged ineffective assistance of
19   counsel based on trial counsel's failure to investigate (1) Petitioner's intellectual and
20   physical disabilities, (2) the evidence relating to the crime including the reasonableness
21   of a .27% blood alcohol reading given the statements that he had beer and hard alcohol
22   earlier in the day; and (3) the accuracy of the blood alcohol testing to include the
23   credentials of the professional who drew the blood sample and  the chain of custody of
24   the blood sample. (Pet. at 18-21.)

25           1.    Law Applicable to Ineffective Assistance of Counsel Claims

26       The law governing ineffective assistance of counsel claims is clearly established
27   for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).
28   Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas

1  corpus alleging ineffective assistance of counsel, the Court must consider two factors.

2  Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry

3  v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's

4  performance was deficient, requiring a showing that counsel made errors so serious that

5  he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

6  Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell

7  below an objective standard of reasonableness, and must identify counsel's alleged acts

8  or omissions that were not the result of reasonable professional judgment considering

9  the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

10 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential. A court

11 indulges a strong presumption that counsel's conduct falls within the wide range of

12 reasonable professional assistance.  Strickland, 466 U.S. at 687; see also, Harrington v.

13 Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

14      Second, the petitioner must demonstrate that "there is a reasonable probability

15 that, but for counsel's unprofessional errors, the result ... would have been different."

16 Strickland, 466 U.S. at 694.  Petitioner must show that counsel's errors were "so serious

17 as to deprive defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  The

18 Court must evaluate whether the entire trial was fundamentally unfair or unreliable

19 because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United

20 States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

21      A court need not determine whether counsel's performance was deficient before

22 examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

23 Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any

24 deficiency that does not result in prejudice must necessarily fail.  However, there are

25 certain instances which are legally presumed to result in prejudice, e.g., where there has

26 been an actual or constructive denial of the assistance of counsel or where the State has

27 interfered with counsel's assistance.  Id. at 692; United States v. Cronic, 466 U.S., at

28 659, and n. 25 (1984).

As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel, this Court may only grant relief if no fairminded jurist could agree on the correctness of the state court decision.

Furthermore, the Strickland standards apply to claims of ineffective assistance of

1   counsel involving counsel's advice offered during the plea bargain process. <u>Missouri v.</u>

2   <u>Frye</u>, 132 S. Ct. 1399 (2012); <u>Lafler v. Cooper</u>, 132 S. Ct. 1376 (2012). "A defendant has

3   the right to make a reasonably informed decision whether to accept a plea offer." <u>Turner</u>

4   <u>v. Calderon</u>, 281 F.3d 851, 880 (9th Cir. 2002) (citations omitted). Trial counsel must

5   give the defendant sufficient information regarding a plea offer to enable him to make an

6   intelligent decision. <u>Id.</u> at 881. "[W]here the issue is whether to advise the client to plead

7   or not 'the attorney has the duty to advise the defendant of the available options and

8   possible consequences' and failure to do so constitutes ineffective assistance of

9   counsel." <u>United States v. Blaylock</u>, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting

10  <u>Beckham v. Wainwright</u>, 639 F.2d 262, 267 (5th Cir.1981)). The relevant question is not

11  whether "counsel's advice [was] right or wrong, but . . . whether that advice was within

12  the range of competence demanded of attorneys in criminal cases." <u>McMann v.</u>

13  <u>Richardson</u>, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

14      A defendant may attack the voluntary and intelligent character of his plea by

15  showing that he received incompetent advice from counsel in connection with the plea.

16  <u>Tollett v. Henderson</u>, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (a

17  defendant who pleads guilty upon the advice of counsel "may only attack the voluntary

18  and intelligent character of the guilty plea by showing that the advice he received from

19  counsel was not within the standards set forth in <u>McMann</u>"); <u>Mitchell v. Superior Court</u>

20  <u>for City of Santa Clara</u>, 632 F.2d 767, 769-70 (9th Cir. 1980). In order to show prejudice

21  in cases where a defendant claims that ineffective assistance of trial counsel led him to

22  accept a plea offer instead of proceeding to trial, a defendant must demonstrate "a

23  reasonable probability that, but for counsel's errors, he would not have pleaded guilty

24  and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

25              2.      <u>State Court Decision</u>

26      Petitioner presented his claim of ineffective assistance of counsel in his habeas

27  corpus petition to the California Supreme Court. The claim was denied as procedurally

28  defaulted through a citation to <u>In re Robbins</u>, 18 Cal. 4th 770, 780 (1998). (Lodged Doc.

1   9.) Where the state court denies a claim on the merits without explanation, this Court

2   must determine whether the decision was reasonable in light of arguments that were not,

3   but could have been, made in support of the conclusion. Harrington v. Richter, 131 S. Ct.

4   at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories

5   supported or, as here, could have supported, the state court's decision; and then it must

6   ask whether it is possible fairminded jurists could disagree that those arguments or

7   theories are inconsistent with the holding in a prior decision of this Court.").

8              3.    Analysis

9         Here, providing the state court decision with appropriate deference, it is possible

10  for fair-minded jurists to agree that defense counsel's conduct was not deficient and that

11  Petitioner was not prejudiced by counsel's conduct.

12        Respondent argues that Petitioner's claim fails because a fair minded jurist could

13  find that Petitioner did not have any viable defenses or that further investigation would

14  not  likely have led to additional evidence to cause Petitioner to proceed to trial, rather

15  than plead guilty. (Answer at 10-11.)   More specifically, Respondent argues that

16  Petitioner has not shown the significance of the fact that counsel did not engage in

17  further investigations. (Id.) He has not shown the significance of defense counsel's

18  failure to investigate why the officer at the scene failed to give Petitioner a sobriety test,

19  why counsel failed to investigate the reported discrepancy between Petitioner's differing

20  statements about the amount of alcohol he consumed that day, and counsel's failure to

21  investigate the accuracy of the blood-alcohol testing despite having no reason to believe

22  that the result was inaccurate. (Id.) Finally, Respondent asserts that despite Petitioner's

23  contentions, he has not presented a prima facie case that counsel's failure to research

24  Petitioner's disabilities or inability to communicate was unreasonable. (Id.)

25        Upon review of the evidence presented, the Court holds that defense counsel did

26  not give Petitioner constitutionally defective advice, and Petitioner has not shown that he

27  was prejudiced by counsel's advice.   According to the evidence presented, Petitioner

28  was found at the scene of the accident displaying objective signs of intoxication. (Lodged

1    Doc. 15 at 4.) He admitted at that time that he had two beers earlier that day. (Id.)

2    However, upon being booked he stated to the nursing staff that he had drank one pint of

3    Kessler brand whiskey. (Id.) A blood draw revealed Petitioner's blood alcohol level to be

4    .27 percent. (Id.) Petitioner had a prior history of driving under the influence including two

5    convictions for driving under the influence of alcohol in 2004 and 2005.

6         As described, there was strong evidence that Petitioner was guilty of the crimes in

7    question. In his petition, he questions why the peace officer did not give him a field

8    sobriety test at the scene, why there was no effort to determine which of Petitioner's

9    statements about how much alcohol he consumed was correct, why counsel did not

10   investigate the chain of custody with regard to the blood-alcohol test, and why counsel

11   did not investigate whether Petitioner's physical disabilities including club feet, poor

12   eyesight, deafness in one ear, and history of seizures could have been the cause of the

13   accident. Petitioner presents no realistic theory upon which a viable defense could have

14   been mounted around or in response to such investigation. He has provided no reason

15   to believe that there was mishandling of his blood alcohol test. As to the different

16   statements regarding how much he had drunk, a reasonable attorney would not find that

17   the statements negated each other. Rather, both statements are damaging to his case

18   because they reveal that he twice admitted that he was drinking before the accident.

19   Likewise, even if Petitioner has a history of seizures, he presents no evidence that he

20   advised counsel that he may have had a seizure at the time of the accident.[1] In light of

21   the totality of the evidence, defense counsel did not act unreasonably in failing to

22   research further issues that were not reasonably likely to lead to viable defenses.

23        Furthermore, Petitioner's claims of mental disability and lack of an interpreter are

24   not availing. While Petitioner may suffer from mental disabilities, it does not appear that

25   they are such as would provide a defense to culpability or render him incompetent to

26   stand trial. The same is true of his language skills, and his own statements belie his

27   _____

28        [1] Only upon requesting an evidentiary hearing, does Petitioner mention that he now thinks he may have had a seizure at the time of the accident.

1   argument here. During sentencing Petitioner stated his remorse over his actions: "I'm

2   truly sorry for the victims' family and my own family. And this was – I have a lot of

3   problems in my life. And I'm just sorry about this. If I could take it back I would. Truly

4   sorry." (Lodged Doc. 13.) Accordingly, Petitioner's allegations that he was not proficient

5   speaking English, and that he lacked capacity to understand the proceedings are

6   inconsistent with the record.

7        While Petitioner requests an evidentiary hearing and asks the Court to appoint

8   counsel, the Court finds that neither would benefit Petitioner with regard to his ineffective

9   assistance of counsel claim.

10       In light of the doubly deferential standard on federal habeas review, it is not

11  possible to find that the state court decision was unreasonable. While Petitioner could

12  have proceeded to trial to attempt to present his alleged defenses, Petitioner has not

13  met his burden of showing that there was a "reasonable probability that… the result ...

14  would have been different." Strickland, 466 U.S. at 694. Fairminded jurists could

15  therefore disagree with the correctness of the state court decision that counsel's failure

16  to further investigate Petitioner's alleged defenses and to recommend that Petitioner

17  plead guilty was unreasonable.  Petitioner's claim of ineffective assistance of counsel is

18  without merit.

19  **V.    CONCLUSION**

20       Petitioner is not entitled to relief with regard to the claims presented in the instant

21  petition. The Court therefore orders that the petition be DENIED.

22  **VI.   CERTIFICATE OF APPEALABILITY**

23       A state prisoner seeking a writ of habeas corpus has no absolute entitlement to

24  appeal a district court's denial of his petition, and an appeal is only allowed in certain

25  circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute

26  in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which

27  provides as follows:

28       (a) In a habeas corpus proceeding or a proceeding under section 2255

before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)     (1)  Unless  a  circuit  justice  or  judge  issues  a  certificate  of appealability, an appeal may not be taken to the court of appeals from–

>     (A)  the  final  order  in  a  habeas  corpus proceeding in which the detention complained of arises out of process issued by a State court; or

>     (B)  the  final  order  in  a  proceeding  under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In  the  present  case,  the  Court  finds  that  no  reasonable  jurist  would  find  the Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

///

16

1

**ORDER**

2          Accordingly, IT IS HEREBY ORDERED:

3          1) The petition for writ of habeas corpus is DENIED;

4          2) All pending motions are DENIED as MOOT;

5          3) The Clerk of Court is DIRECTED to enter judgment and close the case; and

6          4) The Court DECLINES to issue a certificate of appealability.

7

8

IT IS SO ORDERED.

9

10          Dated:   __March 25, 2014__          _____ /s/ *Michael J. Seng*

11                                                          UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17